Phyllis KNOPP and Husband, Robert Knopp, Plaintiffs–Appellees,

v.

AMERICAN AIRLINES, INC., International Total Services, Inc., and James Davidson, Jr., Defendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Nov. 25, 1996.

Frank C. Ingraham, Law Offices of Frank C. Ingraham, Nashville/Franklin, for Plaintiffs–Appellees.

Kenneth A. Weber, James M. Doran, Jr., Manier, Herod, Hollabaugh & Smith, Tyree Harris, IV, Lisa L. Ramsay, Lewis, King, Krieg, Waldrop & Catron, Nashville, for Defendants–Appellants.

## OPINION

REID, Justice.

This case presents for review the decision of the Court of Appeals holding that the plaintiffs' state commonlaw negligence and contract claims, based on the allegation that the defendants failed to properly assist the plaintiff Phyllis Knopp while she was changing planes in Nashville, are not preempted by the Federal Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C.App. § 1301 *et seq.* The trial court had held that the ADA preempted the claims and granted the defendants' motion for summary judgment dismissing the suit as to all defendants. The decision of the Court of Appeals reversing the judgment entered in the trial court is affirmed.

Plaintiffs (appellees on this appeal) Phyllis Knopp and her husband, Robert Knopp, sued defendants (appellants) American Airlines, Inc. ("American"), International Total Services, Inc. ("ITS"), and James Davidson, Jr., for personal injuries sustained by Mrs. Knopp when she fell from an electric cart in the Nashville airport. Mrs. Knopp was a passenger on an American flight from San Antonio to Norfolk which required a change of planes in Nashville. She had made prior arrangements with American for a wheelchair to be available to transport her between gates in Nashville. However, when she arrived no wheelchair was provided. Instead, she was directed to an electric cart driven by Davidson, an employee of ITS, which, pursuant to a contract with American, provided such services for its passengers. The plaintiffs base their claims on the allegation that American breached its agreement with Mrs. Knopp to provide a wheelchair and that all the defendants were negligent in the operation of the cart.

1. This section has been recodified without sub-

The defendants assert that the plaintiffs' claims are preempted by § 1305(a)(1)[1] of the ADA, which provides in pertinent part:

> [N]o state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any carrier....

The United States Supreme Court has considered the scope of the ADA's preemption of state law in two recent opinions. In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Court held that the ADA "pre-empts the States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." *Id.* at 378, 112 S.Ct. at 2034. The Court began its analysis by reviewing the history of the ADA:

> Prior to 1978, the Federal Aviation Act of 1958 (FAA) ... gave the Civil Aeronautics Board (CAB) authority to regulate interstate air fares and to take administrative action against certain deceptive trade practices. It did not, however, expressly pre-empt state regulation, and contained a "savings clause" providing that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506....

> In 1978, however, Congress, determining that "maximum reliance on competitive market forces" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality ... of air transportation services," enacted the Airline Deregulation Act (ADA). 49 U.S.C.App. §§ 1302(a)(4), 1302(a)(9). To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law "relating to rates, routes, or services" of any air carrier. 49 U.S.C.App. § 1305(a)(1). The ADA retained the

stantive change as 49 U.S.C.S. § 41713(b)(1).

CAB's previous enforcement authority regarding deceptive trade practices (which was transferred to the Department of Transportation (DOT) when the CAB was abolished in 1985) and it also did not repeal or alter the saving clause in the prior law. *Id.*

The Court then examined the language of the ADA preemption provision. The Court emphasized that, for purposes of that case, the key phrase was "relating to." These words, the Court said, "express a broad preemptive purpose." *Id.* at 384, 112 S.Ct. at 2037. The Court defined the "relating to" language as "having a connection with or reference to airline 'rates, routes, or services.'" *Id.* The Court rejected the argument that the ADA "only pre-empts the States from actually prescribing rates, routes, or services" because that interpretation "simply reads the words 'relating to' out of the statute." *Id.*

Because the state regulations at issue in that case referred to air fares, the Court concluded that they "relate to" airline rates. *Id.* at 388, 112 S.Ct. at 2039. The Court also found that the "relating to" language was broad enough to include economic impact: "In any event, beyond the guidelines' express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares." *Id.* The Court acknowledged, however, that the ADA does not preempt all state laws as applied to airlines:

> [W]e do not ... set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising (for example, state laws preventing obscene depictions) would similarly "relat[e] to" rates; the connection would obviously be far more tenuous.... "[S]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner" to have preemptive effect."

*Id.* at 390, 112 S.Ct. at 2040 (quoting *Shaw v. Delta Air Lines,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983)).

The United States Supreme Court next addressed the scope of the ADA preemption provision in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). In *Wolens,* participants in the airline's frequent flyer program brought a state-court suit challenging the airline's retroactive changes in terms and conditions of the program. The Court held that "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." *Id.* at 222, 115 S.Ct. at 820.

After determining that the plaintiffs' claims related to rates, the Court shifted its focus from the "relating to" language to the words "enact or enforce any law" in the preemption provision. The Court first considered the plaintiffs' claim under the state consumer protection laws and then the breach of contract claim. The Court concluded that the ADA preempts the former claims because of "the potential for intrusive regulation of airline business practices inherent in state consumer protection legislation." *Id.* at 227, 115 S.Ct. at 823.

In contrast, the Court concluded that enforcement of private agreements does not involve the potential for intrusive state regulation:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.... [T]erms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§ ] 1305(a)(1)."

*Id.* at 228–29, 115 S.Ct. at 824. The Court observed that the ADA gives no indication that Congress intended to establish an administrative process for DOT adjudication of private contracts. *Id.* at 232, 115 S.Ct. at 825. Furthermore, the Court stated:

> Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fash-

ioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts. *Id.* Finally, the Court explained how the ADA's preemption provision and the FAA's saving clause may be read together:

> The conclusion that the ADA permits state-law-based court adjudication of routine breach of contract claims also makes sense of Congress' retention of the FAA's saving clause, § 1106, 49 U.S.C.App. § 1506 (preserving "the remedies now existing at common law or by statute"). The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*Id.* at 232–33, 115 S.Ct. at 826 (footnote omitted).

■ Thus, *Morales* and *Wolens* establish a two-part test for determining ADA preemption of a state law claim: (1) the claim must be related to airline rates, routes, or services, either by expressly referring to them or having a significant economic effect upon them; and (2) the claim must involve the enactment or enforcement of a state law, rule, regulation, standard or other provision. *See Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423, 1432 (7th Cir.1996); *Continental Airlines v. Kiefer,* 920 S.W.2d 274, 281 (Tex. 1996).

The facts of the present case are analogous to those in *Seals v. Delta Air Lines, Inc.,* 924 F.Supp. 854 (E.D.Tenn.1996), in which the same issues were carefully considered by the United States District Court. The plaintiff, who had difficulty walking long distances because of physical problems, made arrangements with Delta Airlines for transportation between gates when she had to change planes in Dallas on her flight from Chattanooga to Killeen, Texas. However, no assistance was provided when she arrived in Dallas. When the plaintiff asked for the promised wheelchair, she was told that there was not one there. In an effort to catch her flight to Killeen, which already had begun boarding, she tried to run to the gate. While running, she collapsed and fell. The plaintiff's suit against Delta Airlines alleged breach of contract and negligence.

Relying on *Wolens,* the district court held that the state breach of contract action was not preempted by the ADA. *Id.* at 858. With regard to the negligence claim, the court stated:

> Although *Wolens* did not actually decide whether state common law negligence actions would be preempted by the ADA, dicta abound in each of this case's three opinions. In fact, the issue was brought out in oral argument, as the majority noted in a footnote:
>
>> The preceding subsection ... requires an air carrier to have insurance, in an amount prescribed by the DOT, to cover claims for personal injuries and property losses "resulting from the operation or maintenance of aircraft." *See* Brief for United States as Amicus Curiae 19–20, and n. 12. American does not urge that the ADA preempts personal injury claims related to airline operations. *See* Tr. of Oral Arg. 4 (acknowledgment by counsel for petitioner that "safety claims," for example, a negligence claim arising out of a plane crash, "would generally not be preempted"); Brief for United States as Amicus Curiae 20, N.12 ("It is ... unlikely that Section 1305(a)(1) preempts safety-related personal-injury claims relating to airline operations.").
>
> *Id.* at 231 n. 7, 115 S.Ct. at 825 n. 7. The majority later noted:
>
>> Justice Stevens reads our *Morales* decision to demand only minimal preemption; in contra[s]t, Justice O'Connor reads the same case to mandate total preemption....

Justice O'Connor's "all is preempted" position leaves room for personal injury claims, but only by classifying them as matters not "relating to [air carrier] . . . services."

*Id.* at 234 & n. 9, 115 S.Ct. at 826–27 & n. 9.

Justice Stevens wrote:

In my opinion, private tort actions based on common-law negligence or fraud, or on a statutory prohibition against fraud, are not pre-empted. . . .

. . . .

*Id.* at 235, 115 S.Ct. at 827–28 (Stevens, J., concurring in part and dissenting in part) (footnote and citations omitted).

Justice O'Connor's much harsher application of preemption, as noted above, would still leave room for personal injury claims:

As the Court recognizes, my personal view of *Morales* does not mean that personal injury claims against airlines are always preempted. Many cases decided since *Morales* have allowed personal injury claims to proceed, even though none has said that a State is not "enforcing" its "law" when it imposes tort liability on an airline. In those cases, courts have found the particular tort claims at issue not to "relate" to airline "services," . . . .

*Id.* at 242, 115 S.Ct. at 830 (O'Connor, J., concurring in part and dissenting in part) (citation omitted). As previously noted, Justice Thomas joined in this part of Justice O'Connor's opinion.

From an analysis of the dicta in *Wolens,* this Court can reach but one conclusion, that the Supreme Court does not interpret the ADA preemption clause to extend to personal injury suits against carriers. Even Justice O'Connor, who espouses the broadest interpretation of the preemption clause, would allow such suits to continue on the theory that such safety concerns do not "relate" to provisions of "services" by carriers. This Court is also persuaded by the logic of Justice Stevens' opinion that Congress could not have intended either to leave passengers injured through airline negligence without a remedy or to turn the Department of Transportation into a forum for adjudication of personal injury claims. The defendant's motion for summary judgment will therefore be **DENIED** as to the negligence claim as well.

*Seals,* 924 F.Supp. at 858–59.

The present case is also similar to the second of two cases decided by the Texas Supreme Court in *Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274 (Tex.1996). In the second case, a passenger and his parents sued the airlines for breach of contract, negligence, and violations of the state consumer protection statutes, based on their failure to provide meet-and-assist services. The trial court granted the airlines' motion for summary judgment on the ground that the ADA preempted the plaintiffs' action. The court of appeals affirmed as to the claim under the consumer protection statute but reversed as to the breach of contract and negligence claims. The airlines appealed only the reversal of the summary judgment on the negligence claim.

The Texas Supreme Court first determined that, given the broad definition of "related to" prescribed by *Morales,* a personal-injury negligence action is related to airline rates and services. *Id.* at 281. The court stated:

Such a negligence action is not related to airline rates and services quite as directly as the contract claims in *Wolens,* but the impact of tort liability on an airline's rates and services is no less real. The effect is certainly not as "tenuous, remote, or peripheral" as a prohibition against obscenity in advertising, the example *Morales* gives of a non-preempted law. 504 U.S. at 390, 112 S.Ct. at 2040. Tort liability cannot but have, in *Morales*' words, "a significant impact upon the fares [airlines] charge," *id.* at 390, 112 S.Ct. at 2040, just as the advertising guidelines in that case.

*Id.* The court then examined whether a personal-injury negligence action constitutes enforcement of state law within the meaning of the ADA's preemption provision. The court held:

With certain reservations, we think negligence law is not so policy-laden in imposing liability for personal injuries that suits for damages like those before us are preempted by the ADA. We recognize that with negligence law, and other tort law, there is a greater risk that state policies will be too much involved than there is with contract law, especially in the area of damages. For example, recovery of punitive damages for negligence is, depending on the State involved, essentially unlimited, limited by judicial rule, limited by statute, shared between the plaintiff and the state, or disallowed altogether. One could easily argue that the threat of punitive damages against airlines has a greater regulatory effect than liability for actual damages. Also, recovery of damages for mental anguish may or may not require accompanying physical injury, or aggravated conduct by the defendant, or be subject to other restrictions. Such differences could fall within the concerns argued by the DOT in *Wolens*, but these differences are minimal in the cases before us. Plaintiffs in neither case seek punitive damages, and we cannot determine from the limited summary judgment records how significant the mental anguish claims may be. *Id.* at 282.[2]

■ The first issue to be considered in the case at bar is the breach of contract claim. American undertakes to avoid the holding in *Wolens* by asserting that it was obligated by the Air Carrier Access Act of 1968, 49 U.S.C.App. § 1374 to provide Mrs. Knopp with a wheelchair because she qualifies as a "handicapped individual." This position is contrary to American's statement in its Court of Appeals brief that "[p]laintiffs can point to no provision of the ACAA's implementing regulations that American violated." Furthermore, the plaintiffs do not allege a violation of any state or federal law regulating treatment of the handicapped. The plaintiffs' claim is based on common-law contract principles. *Wolens* compels this Court to conclude that a breach of contract claim

based on state law is not preempted by § 1305(a)(1). Even though the agreement to provide a wheelchair for transportation between gates may be said to relate to airline services, it constitutes a privately assumed obligation, not an enforcement of state law. Consequently, the ADA does not preempt the state law breach of contract action in this case.

■ The other issue before the Court is the negligence claim. Although the United States Supreme Court has not decided the issue, dicta in *Wolens* strongly suggests that the ADA does not preempt personal injury suits. *Seals*, 924 F.Supp. at 859; *Continental Airlines*, 920 S.W.2d at 281. The plaintiffs allege failure to exercise due care in operating the electric cart from which Mrs. Knopp fell. The cart was used to transport airline passengers between gates. Given *Morales'* construction of the "relating to" language in § 1305(a)(1), the Court concludes that the negligence claim in this case is related to airline services. In reaching the conclusion that the negligence action does not constitute an enforcement of state law relating to services within the meaning of § 1305(a)(1), the Court adopts the reasoning of the Texas Supreme Court in the *Continental Airlines* decision. As stated by that court:

Fundamentally, the purpose of ADA preemption is not to absolve airlines from all liability under state law, but to prohibit state regulation of air carriers, direct or indirect. Congress' concern was "that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378, 112 S.Ct. at 2034. Commonlaw negligence actions to recover damages for personal injuries do not impinge in any significant way on Congress' concern. Such actions did not impair federal regulation before the ADA, and we do not see how they impair deregulation since.

*Continental Airlines*, 920 S.W.2d at 282. Thus, the conclusion is that the plaintiffs'

---

**2.** Since the plaintiffs in the case before this Court also do not seek punitive damages, it is not necessary to consider, at this time, whether a claim for punitive damages is preempted by the ADA. *Cf. Travel All Over the World,* 73 F.3d at 1432 n. 8 (concluding that the ADA preempts punitive damages claims).

negligence claim in this case is not preempted by the ADA.

The decision of the Court of Appeals is affirmed, and the case is remanded to the trial court.

Costs are taxed against the defendants.

BIRCH, C.J., and DROWOTA, ANDERSON and WHITE, JJ., concur.