# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### January 26, 2001 Session

## MUSSON THEATRICAL, INC., ET AL. v. FEDERAL EXPRESS CORPORATION

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 104293-2    The Honorable Floyd Peete, Jr., Chancellor**

---

### No. W2000-01247-COA-R3-CV - Filed April 12, 2001

---

Plaintiffs, as shippers, sued defendant, FedEx Corporation, for fraud and misrepresentation because of defendant's practice of charging more for economy two-day service than for one-day service for certain packages.  Defendant's motion to dismiss was granted on the basis of preemption by federal law, Airline Deregulation Act, and for failure to state a claim upon which relief can be granted.  Plaintiffs appeal.  We affirm.

### Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Cornish F. Hitchcock, Herbert E. Milstein, Lisa M. Mezzetti of Washington, D.C.
Alan R. Marizon, Coeur D'Alene, ID
Michael R. Marshall, Memphis
David J. Guin, Birmingham, AL
For Appellants, Musson Theatrical, Inc., and Modernage Photoservice, Inc.

R. Jeffery Kelsey and Dwayne S. Byrd, Memphis, For Appellee, Federal Express Corporation

### OPINION

Plaintiffs are two private businesses, Musson Theatrical Inc. and Modernage Photoservice, Inc. ("Plaintiffs") who shipped packages via Federal Express Corporation (FedEx) using its "economy second day delivery."  Plaintiffs allege that they have been defrauded by FedEx's practice of charging more for economy two day service than for one day service for certain packages.

Plaintiffs filed suit on behalf of themselves and as a class action pursuant to T.R.C.P. 23[1] on behalf of all persons who used "FedEx Economy Two-Day Service" for delivery of packages less than eight ounces in weight during the period starting no later than December 1991, through the date of the complaint, June 9, 1994.

Appellants' brief succinctly summarizes the major allegations of the complaint, and we quote that part of the brief:

> FedEx, one of the world's largest all-cargo carriers, serves express package markets both domestically and internationally. For some time FedEx offered two non-freight overnight delivery services:
>
> > "FedEx Priority Overnight Service," for delivery of a package by 10:30 a.m. local time the next business day morning; and
> >
> > "FedEx Standard Overnight Service," for deliver of a package by 3:00 p.m. local time the next business day afternoon.
>
> In response to competition, FedEx started offering second-day delivery service no later than December 1991. This service was entitled "FedEx Economy Two-Day Service" and contemplated delivery by 4:30 p.m. local time the second business day after pick-up or drop-off of the package (the "Economy Service"). FedEx earned revenue of approximately $782,907,000 from Economy Service in the fiscal year ending May 31, 1992 and over $952,000,000 in the fiscal year ending May 31, 1993.
>
> However, FedEx systematically deceived its customers by charging more for Two-Day Economy Service than for Standard Overnight Service (next afternoon delivery) for "letter packages" (under eight ounces). Federal Express falsely advertised its second ay delivery as "Economy Two-Day Service – a money saving alternative to overnight services.. . ." Nor did the waybill contain a notation that the Economy rate was unavailable for eight-ounce packages. Moreover, FedEx employees did not reveal this pricing practice at its drop-off offices, when packages were picked up at customers' locations, or on FedEx's telephone service lines. Contrary to FedEx's major argument on the facts, although a chart in the

---

[1] There has been no determination by the trial court pursuant to Tenn.R.Civ.P. 23.03 that the action is maintained as a class action.

FedEx catalogue – on one line and sometimes only through asterisked language – indicated that Economy Service was "not available" for packages up to eight ounces, this only contributed to FedEx's misleading and fraudulent representations: First, it is *only* for Economy Service that a letter package rate is not available, thus contributing to customer confusion; second, FedEx's actions indicated to its customers that Economy Service *was* available for these packages, because FedEx did not refuse to accept the packages – rather, it gladly took the eight-ounce packages and billed a one-pound rate, without telling the customers that it would do so. Nowhere in the catalogue did FedEx indicate that an eight-ounce "Economy Service" two-day delivery package would be billed at a one-pound rate, thus making it more expensive than if the customer had selected delivery by 3 p.m. the next day. FedEx also used deceptive billing and airbill descriptions.

Thus, a customer paid *more* for sending a letter package via two-day delivery than if he had sent it for delivery the next afternoon. FedEx states that the rates, as of 1993, were $13 for a one-pound or less package sent Economy Two-Day Service versus $11.50 for an eight-ounce package sent using Standard Overnight Service. The two-day rate thus cannot be fairly characterized by FedEx as the "money saving alternative to overnight service."

Given this illogical result, Musson and class members would have used Standard Overnight Services rather than Economy Two-Day Services for letter weight packages – to save money *and* have an earlier delivery – but for FedEx's deception.

(Emphasis in original).

The complaint seeks monetary damages and injunctive relief based on alleged intentional fraudulent acts and omissions and negligent misrepresentations for alleged untrue statements of material facts and/or omissions of material facts.

In August of 1994, a joint motion to stay litigation was filed stating that there were lawsuits between the same parties and involving the same subject matter pending in both state and federal court, and that FedEx had filed a motion to dismiss in federal court. This case was stayed by a consent order pending a decision in federal court on the pending motion to dismiss. On November 22, 1994, the federal court filed an order granting FedEx's motion to dismiss finding that there is no private right of action pursuant to the Federal Aviation Act (FAA). Therefore, without a federal question, the court lacks jurisdiction. In the same order, the federal court ruled that the state law claims were preempted pursuant to the Airline Deregulation Act of 1978 (ADA), because the claims

relate to rates and services. On appeal, the Sixth Circuit Court affirmed the dismissal of Plaintiffs' federal claim, but concluded that the federal district court lacked jurisdiction to rule on the state law claims. Thus, the state law claims asserted in this action were ripe for litigation.

Upon a lifting of the stay, FedEx filed a motion to dismiss the claims of Plaintiffs pursuant to the Tenn.R.Civ.P. 12.02(6) asserting that the claims were both preempted by the federal ADA statute and failed to state claims under state substantive law. FedEx argues that Plaintiffs' complaints about airline rates and advertisements were designated by Congress to be brought exclusively by the United States Department of Transportation (DOT). On April 27, 2000, the chancery court entered an order dismissing Plaintiffs' complaint, finding that the claims are preempted by the ADA, 49 U.S.C. 41713(b)(i) and that the Plaintiffs had failed to state a claim under Tennessee law. Plaintiffs have appealed and present two issues for review as stated in their brief:

> I. Did the trial court err in finding that common law claims of fraud and misrepresentation against an airline are preempted by federal law?

> II. Did the trial court err in going beyond the pleadings to decided that Plaintiffs' complaint should be dismissed for failure to state a cause of action?

Plaintiffs assert that a chart in the FedEx catalogue indicated that Economy Service was "not available" for packages up to eight ounces. Plaintiffs assert FedEx's action indicated to the customers that the Economy Service was available for these packages under eight ounces by not refusing to accept these packages for shipment by Economy Service. Plaintiffs contend that FedEx took the packages under eight ounces and billed the customer at a one pound rate, without notifying the customer. Furthermore, Plaintiffs assert that FedEx used deceptive billing and airbill descriptions in that nowhere in the catalogue did FedEx indicate that packages up to eight ounces shipped by Economy Service would be billed at a one pound rate, thereby making it more expensive than if the customer had selected delivery by 3:00 p.m. the next day. By way of example, Plaintiffs assert that as of 1993, FedEx's rate was $13.00 for a package of one pound or less sent Economy Two-Day Service versus $11.50 for an eight ounce package sent by Standard Overnight Service. Consequently, the two day rate cannot be fairly characterized by FedEx as the "money saving alternative to overnight service." Plaintiffs contend that had it not been for FedEx's deception, the class members would have used Standard Overnight Service rather than the Economy Two-Day Service for packages up to eight ounces to save money and have earlier delivery. Plaintiffs contend that their common law fraud claim is based on enticements to class members to use FedEx's service through fraudulent and intentional acts and omissions, and that their negligent misrepresentation claim is based on various untrue statements of material facts and/or omissions of material facts that were necessary to render the statements not misleading.

The first issue addresses the chancery court's dismissal of Plaintiffs' fraud and misrepresentation claims on the grounds that they are preempted by federal law. In its motion to dismiss, FedEx relies heavily on two United States Supreme Court decisions, **Morales v. Trans World Airlines, Inc.,** 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), and **American**

***Airlines, Inc. v. Wolens,*** 513 U.S. 219, 115 S.Ct. 817, 103 L.Ed.2d 715 (1995), arguing that the language of the ADA preempts their claims. Plaintiffs argue that FedEx reads these two cases too broadly. Plaintiffs contend that the ADA was not a tort reform statute that set out to eliminate the ability of passengers or shippers to pursue common law tort or contract remedies, but on the contrary, in enacting the ADA, Congress was careful to retain a pre-existing provision expressly preserving common law remedies under 49 U.S.C. § 40120 (c) ("a remedy under this part is in addition to any other remedies provided by law.") Plaintiffs contend that allowing their claims to proceed would not affect FedEx's ability to decide what rates to charge or what services to offer, but would only affect FedEx's ability to avoid liability if it induces shippers to send packages by two day service in the mistaken belief that the two day rate is cheaper than the overnight rate. Plaintiffs assert that there is nothing inconsistent with giving airlines the freedom to set their prices, yet holding them accountable for honoring their promises and representations.

Section 1305 (a)(1)[2] of the ADA expressly prohibits states from "enact[ing] or enforc[ing] any law, rule or regulation, standard, or other provision having force and effect of law relating to rates, routes, or other services of any air carrier...." ***Id.*** In ***Morales v. Trans World Airlines, Inc.,*** 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the National Association of Attorney Generals (NAAG) adopted guidelines containing "detailed standards governing, *inter alia*, the content and format of airline fare advertising . . . that purport to be enforceable through the States' general consumer protection statutes." ***Id.*** at 374, *Syllabus*, 112 S.Ct. at 2031  Under threat of suit to enforce the guidelines, the airline sued to enjoin the State Attorneys General from enforcing deception practice laws against airline advertising. In ***Morales***, Court defined § 1305 (a)(1)'s language "relating to" as "having a connection with, or reference to, airline 'rates, routes, or services,'" ***Id.,*** at 384, 112 S.Ct., at 2037. The ***Morales*** Court reviewed the history of the ADA stating:

> Prior to 1978, the Federal Aviation Act of 1958 (FAA), 72 Stat. 731, as amended, 49 U.S.C. App. § 1301 *et seq.*, gave the Civil Aeronautics Board (CAB) authority to regulate interstate air fares and to take administrative action against certain deceptive trade practices. It did not, however, expressly pre-empt state regulation, and contained a "savings clause" providing that "[n]othing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506. As a result the States were able to regulate intrastate airfares (including those offered by interstate air carriers), ***see e.g. California v. CAB,*** 189 U.S.App.D.C. 176, 178, 581 F.2d 954, 956 (1978), ***cert. denied,*** 439 U.S. 1068, 99 S.Ct. 834, 59 L.Ed.2d 32 (1979), and to enforce their own laws against deceptive trade practices, ***see Nader v. Allegheny***

_____

[2] This section was included in the 1994 recodification of the FAA and is now codified as 49 U.S.C. § 41713 (b)(1). The only change is "relating" to "related."

-5-

> *Airlines, Inc.,* 426 U.S. 290, 300, 96 S.Ct. 1978, 1985, 48 L.Ed.2d 643 (1976).
>
> In 1978, however, Congress, determining that "maximum reliance on competitive market forces" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality ... of air transportation services," enacted the Airline Deregulation Act (ADA). 49 U.S.C.App. §§ 1302(a)(4), 1302(a)(9). To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision, prohibiting the States from enforcing any law "relating to rates, routes, or services" of any air carrier. § 1305(a)(1). The ADA retained the CAB's previous enforcement authority regarding deceptive trade practices (which was transferred to the Department of Transportation (DOT) when the CAB was abolished in 1985), and it also did not repeal or alter the saving clause in the prior law.

*Id.* at 378 - 379, 112 S.Ct. at 2034. The Court acknowledged that state enforcement of air fair advertising guidelines was opposed by the retention of regulatory authority over the airlines by DOT, a federal agency. *Id.* at 379, 112 S.Ct. at 2034-35. In its analysis of the "relating to" language the *Morales* Court referred to the standard used to interpret the preemption provision in the Employee Retirement Income Security Act of 1974 (ERISA) which provides for the pre-emption of state law relating to an employee benefit plan "if it has a connection with, or reference to such a plan." *Id.* at 384, 112 S.Ct. at 2037 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 29000, 77 L.Ed. 2d 490 (1983)). The *Morales* Court found the preemption language of the ADA identical to relevant language used in ERISA, and stated that it is appropriate "to adopt the same standard here: State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted under 49 U.S.C. App.§ 1305(a)(1)." *Id.* at 384, 112 S.Ct. at 2037. The argument that the savings clause in the prior statute limited the scope of the preemption clause was rejected by the Court stating that "[a] general 'remedies' saving clause cannot be allowed to supersede the specific substantive pre-emption provision..." *Id.* at 385, 112 S.Ct. at 2037. The Court held that the guidelines were "relating to" the rate, routes, or services of the airlines and were therefore expressly preempted by the language of the ADA of 1978 § 105(a)(1), as amended, 49 App.U.S.C. § 1305(a)(1). *Id.* at 388, 112 S.Ct. at 2039. The *Morales* Court stated "it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares. Advertising 'serves to inform the public of the ... prices of products and services, and thus performs an indispensable role in the allocation of resources.'" *Id.* (Quoting *Bates v. State Bar of Arizona,* 433 U.S. 350, 364, 97 S.Ct. 2691, 2699, 53 L. Ed. 2d 810 (1977)). The *Morales* Court went on to limit where state actions are "related to" rates, quoting the Court in *Shaw*:

> "[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect. 463 U.S.,at 100, n. 21, 103 S.Ct., at 2901, n. 21. In this case, as in *Shaw*, "[t]he present litigation plainly does not present a borderline question, and

we express no views about where it would be appropriate to draw the line." **Ibid**. Finally, we note that our decision does not give the airlines *carte blanche* to lie to and deceive consumers; the DOT retains the power to prohibit advertisements which in its opinion do not further competitive pricing, *see* 49 U.S.C. App. § 1381.

*Id.* at 390, 112 S.Ct. at 2040.

The second United States Supreme Court case relevant to our inquiry is **American Airlines v. Wolens,** 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed. 2d 715 (1995), in which the Court again addressed the scope of the ADA's preemption provision. In **Wolens,** a class action suit was brought in state court alleging breach of contract and violations of the Illinois' Consumer Fraud and Deceptive Business Practices Act. The plaintiffs sought injunctive relief against the airlines based on retroactive changes in a frequent flier rewards program. The **Wolens** Court followed the reasoning of the **Morales** Court finding that the claims brought under the state consumer statute are preempted. With regard the breach of contract claims, the Court found that they are not preempted, stating:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. . . . A remedy confined to a contract's terms simply holds parties to their agreements– in this instance, to business judgments an airline made public about its rate and services.

*Id.* at 229. In allowing the state contract claim to stand, the **Wolens** court voiced a concern that reading the ADA to preempt contract claims would result in a lack of any vehicle for resolving such disputes, and noted that although the DOT prohibits unfair and deceptive practices, "the DOT has neither the authority nor the apparatus required to superintend a contract dispute resolution regime."*Id.* at 232, 115 S.Ct. at 825.(citing Brief for United States as *Amicus Curiae* 22.). According to the *Wolens* Court, allowing state breach of contract claims to proceed was in harmony with the FAA's saving statute:

> The conclusion that the ADA permits state-law-based court adjudication of routine breach-of-contract claims also makes sense of Congress' retention of the FAA's saving clause, § 1106, 49 U.S.C.App. § 1506 (preserving "the remedies now existing at common law or by statute"). The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself

-7-

stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or polices external to the agreement.

*Id.* at 232 -33 115 S.Ct. at 826.

The Court rejected American Airlines' argument that the fraud claim and the breach of contract claim should be treated in the same manner, distinguishing between the two claims, stating:

But a breach of contract, without more, "does not amount to a cause of action cognizable under the [Consumer Fraud] Act and the Act should not apply to simple beach of contract claims." *Golembiewski v. Hallberg Ins. Agency, Inc.,* 262 Ill.App.3d 1082, 1093, 200 Ill. Dec. 113, 121, 635 N.E.2d 452, 460 (1st Dist. 1994). The basis for a contract action is the parties' agreement; to succeed under the consumer protection law, one must show not necessarily an agreement, but in all cases, unfair or deceptive practice.

*Id.* at 233.

The Tennessee Supreme Court addressed preemption of state law claims by the ADA in *Knopp v. American Airlines, Inc.*, 938 S.W.2d 357 (Tenn. 1996). In *Knopp*, an airline passenger, who had requested a wheelchair for transportation between gates while changing planes, was injured when she fell from an electric cart which was furnished instead of the wheelchair. She filed suit against the airline for breach of contract and negligence. The trial court granted the airline summary judgment holding that the ADA preempted both the contract action and the tort action. The Court of Appeals reversed the trial court, and the Supreme Court affirmed the Court of Appeals holding that neither the contract action nor the tort action were preempted. Our Supreme Court, after reviewing the U. S. Supreme Court's decision in both *Morales* and *Wolens*, stated:

Thus, *Morales* and *Wolens* establish a two-part test for determining ADA preemption of a state law claim: (1) the claim must be related to airline rates, routes, or services, either by expressly referring to them or having a significant economic effect upon them; and (2) the claim must involve the enactment or enforcement of a state law, rule, regulation, standard or other provision. *See Travel All Over the World v. Saudi Arabia,* 73 F.3d 1423, 1432 (7th Cir. 1996); *Continental Airlines v. Kiefer,* 920 S.W.2d 274, 281 (Tex. 1996).

*Id.* at 360.

The Court noted that the facts in *Knopp* are analogous to the facts in *Seals v. Delta Air Lines, Inc.,* 924 F.Supp. 854 (E.D. Tenn. 1996), where the plaintiff, an airline passenger with

difficulty walking long distances, made arrangements with Delta for transportation between gates in Dallas on her flight from Chattanooga, Tennessee to Killeen, Texas. The promised wheelchair was not there for her use, and in an effort to catch her flight to Killeen, which was then boarding, she was running to the gate when she collapsed and fell. Plaintiff sued Delta for alleged breach of contract and negligence, but the district court held that the breach of contract action was not preempted relying on *Wolens*. As to the negligence action, the district court, relying upon *dicta* in *Wolens*, concluded that the U. S. Supreme Court does not interpret the ADA preemption clause to extend to personal injury suits against carriers on the theory that these safety concerns do not "relate to" provisions of "services" by carriers. The Court also noted that an analogous factual situation existed in the case decided by the Texas Supreme Court in *Continental Airlines, Inc. v. Kiefer,* 920 S.W.2d 274, 281 (Tex. 1996), which reached the same conclusion that the federal court reached in *Seals*. The *Knopp* Court noted that *dicta* in *Wolens* suggests that the ADA does not preempt personal injury suits, and that although the negligence claim is related to airlines services, it did not constitute an enforcement of state law related to services within the meaning of the ADA, and thus is not preempted. In so holding, the Court adopted the reasoning of the Texas Supreme Court in *Continental*:

> Fundamentally, the purpose of ADA preemption is not to absolve airlines from all liability under state law, but to prohibit state regulation of air carriers, direct or indirect. Congress' concern was "that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378, 112 S.Ct. At 2034. Common law negligence actions to recover damages for personal injuries do not impinge in any significant way on Congress' concern. Such actions did not impair federal regulation before the ADA, and we do not see how they impair deregulation since.
>
> *Continental Airlines,* 920 S.W.2d at 282. . . .

*Knopp,* 938 S.W.2d at 362.

In *Wolens*, the Court concluded that plaintiff's claims under the Consumer Fraud Act were preempted based on the "full text of the preemption clause, and of the ADA's purpose to leave largely to the airlines themselves, and not at all to states, the selection and design of marketing mechanisms appropriate to the furnishing to the air transportation services." 513 U.S. at 228, 115 S.Ct. at 823. The Court went on to note that the DOT retains authority to investigate unfair and deceptive practices and is authorized to order an airline to cease and desist from such practices. 513 U.S. at 228, 115 S.Ct. at 824, n. 4.

In the instant case, Plaintiffs argue that § 105 [49 U.S.C. 41713(b)(1)] was not meant to preempt their common law claims, as they are not expressly preempted by Congress. Plaintiffs contend that "nothing in the text, structure or history of the ADA suggests that Congress intended broadly to strip passengers or shippers of state common law remedies." Plaintiffs construe the decision in *Morales* to be consistent with its view of § 105, and notes that case did not involve a tort

or contract action arising under state law, as does the case at bar.  Plaintiffs contend that permitting their common law claims to proceed would not force FedEx to charge a determined rate, but would instead keep FedEx from falsely touting its two day delivery as "a money saving alternative to overnight service."  Plaintiffs assert that their challenge is to a voluntary decision made by the airline to offer customers a service, and then provide something different, therefore, their claims are not  preempted.  Furthermore, Plaintiffs assert that there is nothing in *Morales* or *Wolens* that leads to the conclusion that contract claims are allowed, while tort claims are preempted.  While admitting that the case law in this area is not consistent, Plaintiffs assert that there are a number of tort cases, not involving personal injury, in which a tort claim was allowed.  Plaintiffs cite *Wellons v. Northwest Airlines, Inc.*  165 F.3d 493 (6th Cir. 1999), *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.* 164 F.3d 186 (3rd Cir. 1998); *Travel All Over the World, Inc. v. Kingdom of Saudi  Arabia,* 73 F3d 1423 (7th Cir. 1996); *Lathigra v. British Airways, PLC,* 41 F.3d 535 (9th Cir. 1994), *West v. Northwest Airlines, Inc.* 995 F.2d 148 (9th Cir. 1993) in support of their proposition that tort claims are not  preempted by the ADA if  they do not contain what the *Wolens* Court called "prescriptive language."   Plaintiffs  argue that these cases all have in common a "holding out" element, crucial to avoid preemption.  According to Plaintiffs, under *Wolens*, not only contract, but also fraud and misrepresentation claims, as the ones asserted here involving the formation of a contract, or fraudulent inducement of customers to enter a contract, are not preempted.

We move now to applying the two prong test  established by *Morales* and *Wolens* and identified by our Supreme Court in  *Knopp.*  938 S.W. 2d at 360.  Considering the first prong, we find that  the claims of negligent misrepresentation and fraud are directly related to airline rates, routes, or service by expressly referring to rates or as having a significant economic effect upon rates.  Furthermore, the effect is not "tenuous, remote or peripheral" as would be a prohibition against obscenity in advertising, a "nonprice" aspect of airline fare advertising.  *Morales,* 504 U.S. at 390, 112 S.Ct. at 2040 (giving a hypothetical example of a claim that would not be preempted).  Plaintiffs' claims specifically involve rates that FedEx charges for packages under eight ounces shipped by second day delivery service.  Plaintiffs' allegation of misrepresentation and fraud are directly in reference to the manner in which those rates are represented in advertising in FedEx publications.

In addition, we agree with the assertion of FedEx that the outcome of this litigation will have a substantial impact on the airline.  "Tort liability cannot but have, in *Morales*' words,'a significant impact upon the fares [airlines] charge.'"  *Kiefer* 920 S.W.2d at 281 (quoting  *Morales* 504 U.S. at 390, 112 S.Ct. at 2040).   If Plaintiffs were to prevail, FedEx could be required to pay a refund of part of its rate to a yet unknown number of shippers. In addition, although not determative in our holding, we note that Plaintiffs' complaint seeks both compensatory and punitive damages.  Although the *Knopp* Court found it unnecessary to determine whether a claim for punitive damages is preempted by the ADA, that court recognized that the court  in *Travel All Over the World* , 73 F.3d at 1432 n.8, concluded that punitive damages were preempted by the ADA.  *Id.* at 362 n. 2.

As to the requirement of the second prong.  Plaintiffs' claims "must involve the enactment or enforcement of a state law, rule, regulation, standard or other provision."  *Knopp*  at 360.  Obviously, the relief requested by plaintiffs would require enforcement of state policies.  Plaintiffs

seek to recover payment for rates and to enjoin defendant from particular advertisements of its rates. This appears to be intrusive on the authority of the DOT under the ADA.

The DOT is expressly designated by Congress for the adjudication of "aviation economic enforcement proceedings." *Id.* Furthermore, the common law tort claims of fraud and negligent misrepresentation are aimed at addressing the same sort of activity that consumer protection acts are designed to address, and are "indistinguishable from the statutory consumer protection actions in *Morales* and *Wolens*." *Continental*, 920 S.W.2d at 283. Thus, in the instant case, the distinction between a statutory law and common law is not a determinative distinction. Rather, the classification as an "aviation economic enforcement proceeding" put the claims squarely within the purview of the DOT. We find enforcement of state law in the Plaintiffs' claims based on allegations of fraud and misrepresentation by FedEx would be to replace adjudication by the DOT with state adjudication. Thus, Plaintiffs' claims are preempted within the meaning of the ADA.

Having reached this conclusion, we pretermit consideration of the second issue. Accordingly, the order of the trial court as to preemption pursuant to the ADA is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellants, Musson Theatrical, Inc. and Modernage Photoservice, Inc., and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.