IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 28, 2021 Session

## PHI AIR MEDICAL, LLC v. CORIZON, INC.

**Appeal from the Chancery Court for Williamson County**
No. 45485           **James G. Martin, III, Judge**

_____

### No. M2020-00800-COA-R3-CV
_____

PHI Air Medical brought suit based on unjust enrichment and action on sworn account against Corizon for air ambulance services it provided without a contract after Corizon paid only a portion of the billed amount, citing its practice of paying according to statutory caps and Medicare rates. The trial court granted summary judgment, finding that the preemption clause of the Airline Deregulation Act, 49 U.S.C. § 41713, which provides that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation," preempts PHI's claims. We affirm the trial court's finding that PHI's claims are preempted and that summary judgment was proper. We reverse the trial court's grant of PHI's voluntary nonsuit of a claim that PHI did not plead.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part; Case Remanded.**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Erika R. Barnes, Nashville, Tennessee, and Chrisandrea L. Turner, Lexington, Kentucky, for the appellant, PHI Air Medical, LLC.

E. Todd Presnell, Junaid A. Odubeko, and Edmund S. Sauer, Nashville, Tennessee, for the appellee, Corizon, Inc.

## OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

Corizon, Inc. of Brentwood, Tennessee, is a provider of healthcare services that contracts with government entities across the country to provide healthcare to individuals in state custody. PHI Air, LLC ("PHI") is an Arizona company that has provided air-ambulance services to inmates at Corizon-serviced correctional facilities.

PHI filed a complaint in Williamson County Chancery Court in August 2016, alleging that it had provided emergency air ambulance service in Arizona, Indiana, New Mexico, and Maryland to correctional facilities that had contracted with Corizon for medical services; that it billed Corizon its "customary and usual" rates; and that Corizon refused to pay the full amount. Both parties initially agreed that there was no contract between the parties PHI and Corizon governing the dispute.[1] PHI sought relief based on theories of unjust enrichment and action on sworn account, and asked the court for damages in the amount of $3,307,345.47, plus any additional amount that may accrue prior to the resolution of the case, pre-judgment interest, and attorney's fees.[2]

In its answer, Corizon denied that PHI was entitled to the damages sought and asserted that the rates applicable to some of PHI's claims were governed by Arizona and Indiana law and that the remaining claims were barred by the doctrines of laches and waiver. According to Corizon, when rates are not set by a contract or capped by a state law that regulates taxpayer-funded correctional healthcare expenses, Corizon reimburses providers a "default rate" based on the Medicare reimbursement rate. Arizona law statutorily limits provider reimbursement, and Corizon also has a contract with the State of Arizona containing the statutory limitation. *See* Ariz. Rev. Stat. § 41-1608(2). In Indiana, Corizon paid PHI according to the statutory correctional-healthcare rates, which are 104 percent of Medicare reimbursement rates. *See* Ind. Code § 11-10-3-6(c).

In October of 2017, the parties filed cross-motions for partial summary judgment on the Arizona and Indiana claims to determine whether the Airline Deregulation Act of 1978 ("ADA"), codified in scattered sections of 49 U.S.C., preempted the state statutes capping reimbursement for correctional-healthcare services. Corizon asserted that it was entitled to summary judgment on PHI's claims related to Arizona and Indiana invoices because it paid pursuant to state statutes which cap reimbursement for third-party

---

[1] Three years into the litigation, Corizon asserted, as a defense to unjust enrichment, that a contract governed the Indiana dispute.

[2] The trial court permitted PHI Air to amend its complaint in March 2018 to include damages incurred after the filing of the original complaint. This number reflects the damages requested in the Amended Complaint; however, the disputed amount continued to increase during the pendency of the case because Corizon continued to use PHI's services.

healthcare providers. PHI argued that the ADA preempted the state statutory caps as applied to their air ambulance services because those statutes "relate to" air carrier prices. The Court granted PHI's motion and denied Corizon's, agreeing that the ADA preempts the state correctional-healthcare statutes on which Corizon had relied.[3]

In October 2019, PHI filed another Motion for Summary Judgment seeking an award on both the unjust enrichment and action on sworn account claims. Corizon filed a cross-motion for summary judgment arguing that the ADA preempts PHI's causes of action because they "relate to" air-carrier prices and seek to impose implied-in-law payment obligations. In its March 5, 2020, Memorandum and Order, the trial court denied PHI's motion, and granted in part and denied in part Corizon's motion. The trial court held that the ADA preempts all unjust enrichment claims involving air carriers, as a matter of law, but that a genuine issue of material fact existed as to whether the alleged Indiana contract was enforceable. PHI filed a motion to nonsuit, pursuant to Tenn. R. Civ. P. 41.01, any claim it may have asserted as to an Indiana contract, and on May 4, 2020, the trial court entered an Order of Nonsuit of Certain Claim and Entry of Final Judgment dismissing without prejudice any contractual claim PHI may have had arising from an Indiana contract and ordering that its March 5 Memorandum and Order was a final and appealable judgment as a matter of right. PHI timely appealed.

## II. ISSUES

PHI states three issues for our review, which can be combined into a single issue: whether PHI's unjust enrichment and action on sworn account claims are preempted by the ADA.

Corizon states the following additional issues for review:

1.      Did the Chancery Court mistakenly allow PHI to nonsuit a breach of contract claim relating to Indiana services that PHI did not plead, seek leave to plead, or otherwise assert in this litigation?

2.      Does the ADA preempt state statutes capping the reimbursable amount for correctional-healthcare services?

3.      Is PHI entitled to recover its unilaterally set "usual and customary" prices or the reasonable value of the services provided?

---

[3] The ADA provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation[.]" 49 U.S.C. § 41713(b)(1).

4.     Do PHI's claims seeking additional compensation for Indiana services fail on the merits because a contract governs those services?

5.     Does PHI's action on sworn account fail on the merits because Corizon disputes the alleged debt?

### III. STANDARD OF REVIEW

A trial court's decision of whether to grant or deny a motion for summary judgment is a question of law; thus, our review is de novo with no presumption of correctness afforded to the trial court's determination. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019). Summary judgment is appropriate if no genuine issues of material fact exist, and the movant meets its burden of proving that it is entitled to a judgment as a matter of law. *Id.*; Tenn. R. Civ. P. 56.04. As there are no material facts in dispute underlying the trial court's grant of summary judgment, we are tasked with resolving only issues of law.

### IV. ANALYSIS

The outcome of this controversy hinges on the scope of the pre-emption clause of the ADA, which provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. . . ." 49 U.S.C. § 41713(b)(1). PHI argues that the trial court erred in finding that its claims based on unjust enrichment and action on sworn account are pre-empted by the ADA because

> (1) an award of PHI's usual, customary, and reasonable rates under Tennessee's general unjust enrichment common law or action on sworn account statute does not have the requisite "forbidden significant effect" on air carrier prices, routes, or services to trigger preemption; [] (2) ADA preemption is a defense unique to air carriers and which cannot be asserted by non-air carriers, as it was by Corizon in the case below[; and (3) . . .] holding that the ADA preempts all unjust enrichment and action on account claims involving air carriers precludes an air carrier's ability to collect from the beneficiaries of its Services in all instances where no contract exists, in contravention of the ADA's intent.

Conversely, Corizon asserts that PHI's causes of action "fall squarely within the ADA's broad preemptive reach[, as] [b]oth causes of action seek to use the coercive powers of the State to impose an implied-in-law payment obligation that the parties did not voluntarily undertake."

The expressed purpose of the ADA is "'to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services[,]'" a goal that "would . . . be[] frustrated if state regulations were substituted for . . . federal regulations[.]" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 422–423 (1992) (Stevens, J., dissenting) (quoting H.R. Conf. Rep. No. 95–1779, p. 53 (1978), U.S. Code Cong. & Admin. News 1978, 3737).  Hence, Congress included an express preemption clause in the ADA.[4]  Federal preemption of state law is grounded in the Supremacy Clause of the United States Constitution, which provides that the "Constitution, and the Laws of the United States…shall be the supreme Law of the Land…." U.S. Const. art. VI, cl. 2.  Generally, the States govern "within their particular spheres concurrent with the federal government subject only to the power of the Congress under the Supremacy Clause of the United States Constitution to preempt state law." *Pendleton v. Mills*, 73 S.W.3d 115, 126 (Tenn. Ct. App. 2001) (citing *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990); *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 670 (Tenn. Ct. App. 1997)).  Consistent with this principle, a federal law or regulation may preempt a state claim.  *See Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 55 (Tenn. 2013).  Courts recognize both express and implied preemption, but "no matter what type of preemption is at issue, 'the purpose of Congress is the ultimate touchstone.'" *Id.* (quoting *Wyeth v. Levine*, 555 U.S. 555, 556 (2009)).  "In cases involving express preemption, the text of the federal statute will define the domain that Congress intended to preempt." *Pendleton*, 73 S.W.3d at 127 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996)).  Courts are "reluctant to presume" that the state's powers in matters traditionally subject to its authority "are [] displaced by a federal statute unless that is the clear and manifest intent of Congress." *Id.* at 126.

"[B]ecause '[p]re-emption ... is always a federal question,' *Int'l Longshoremen's Ass'n, AFL–CIO v. Davis*, 476 U.S. 380, 388 (1986), our conclusion in a pre-emption case must fall within the boundaries prescribed by United States Supreme Court precedent." *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 854 (Tenn. 2010) (parallel citations omitted).  The U.S. Supreme Court has not addressed the specific issue of whether a claim of unjust enrichment or an action on sworn account is preempted by the ADA.  The Court has, however, set certain parameters to guide our analysis, which we will briefly review.

*Morales v. Trans World Airlines* was the first case in which the U.S. Supreme Court considered the preemptive reach of the ADA.  The issue before the Court was whether the ADA pre-empts states from enforcing their general consumer protection statutes with respect to airline fare advertisements.  504 U.S. at 378.  The Court found that "relating to" was a key phrase of the statute and that it "express[es] a broad pre-emptive purpose." *Id.* at 383–384.  Relying on the ordinary meaning of the words "relating to" and on Supreme

---

[4] Prior to the enactment of the ADA in 1978, "[s]tates were able to regulate intrastate airfares (including those offered by interstate air carriers)[.]" *Morales*, 504 U.S. at 378.

Court jurisprudence with respect to a similarly worded preemption provision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), the Court held that "[s]tate enforcement actions *having a connection with* or reference to airline 'rates, routes, or services' are pre-empted under [49 U.S.C. § 41713(b)(1)]."[5]  *Id*. (emphasis added).  However, the Court also noted that "'[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect."  *Id*. at 390 (bracketed text in original) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).

In *American Airlines, Inc. v. Wolens*, members of American Airlines' frequent flyer program brought a class action suit against the airline for breach of contract and violations of Illinois' Consumer Fraud and Deceptive Business Practices Act after the airline retroactively changed the terms and conditions of the program.  513 U.S. 219, 224–225 (1995).  As in *Morales*, the Court held that the claim brought pursuant to the consumer protection statute was preempted; however, the contract claim was not.  *Id.* at 222.  The court reasoned that a contract is not a state-imposed obligation but rather a self-imposed one and "[a] remedy confined to a contract's terms simply holds parties to their agreements."  *Id*. at 229.

In *Northwest., Inc. v. Ginsberg*, another class action suit involving a frequent flyer program, the plaintiffs brought a common law claim of breach of the implied covenant of good faith and fair dealing against the airline when it terminated plaintiffs' enrollment in the program.  572 U.S. 273, 276 (2014).  The U.S. Supreme Court soundly rejected the argument that the ADA preemption provision applied only to legislation and to regulations promulgated by state agencies, noting that "a common-law rule clearly has 'the force and effect of law.'"  *Id.* at 282.  Moreover, to conclude otherwise would undermine the ADA's deregulatory purpose.  *Id*. at 283.  Accordingly, the Court concluded that "the phrase 'other provision having the force and effect of law' includes common-law claims."  *Id.* at 284.  The central issue in *Ginsberg*, however, was "whether [the] implied covenant claim is based on a state-imposed obligation or simply one that the parties voluntarily undertook."  *Id.* at 285.  The court examined Minnesota's law, which governed the dispute, and held that "[a] State's implied covenant rules will escape pre-emption only if the law of the relevant State permits an airline to contract around those rules[.]"  *Id*. at 288.  Otherwise, the covenant enlarges rather than enforces the contractual agreement between the parties.  *See id.* at 289.

The U.S. Supreme Court, then, has established that (1) state enforcement actions having a connection to airline prices fall under the ambit of the ADA preemption clause; (2) the ADA does not preempt state-law contract claims that merely seek to enforce the parties' voluntary agreements; and (3) common law claims based on state-imposed

---

[5] Prior to the revision of Title 49 of the United States Code by PL103-272, the clause was found in 49 U.S.C. App. § 1305(a)(1).  PL 103-272, July 5, 1994, 108 Stat 745.

obligations that seek to enlarge a contractual agreement are preempted.

The Tennessee Supreme Court has only once considered the issue of ADA preemption, in the 1996 case of *Knopp v. American Airlines, Inc.*, 938 S.W.2d 357 (Tenn. 1996). In this pre-*Ginsberg* case, the Court recognized a two-part test, based on *Morales* and *Wolens*, for determining that a state law claim is preempted: "(1) the claim must be related to airline rates, routes, or services, either by expressly referring to them or having a significant economic effect upon them; and (2) the claim must involve the enactment or enforcement of a state law, rule, regulation, standard or other provision." 938 S.W.2d at 360.[6] Whether federal law preempts a state statute or common law cause of action is a question of law that we review de novo. *Leggett*, 308 S.W.3d at 851.

With this legal landscape in mind, we will consider whether the common law causes of action before us are preempted by the ADA. Because neither party disputes that PHI is an air carrier, we will proceed with application of the *Knopp* test.

## A. Unjust Enrichment

### 1. *Knopp*'s first prong

Under the first part of the *Knopp* test, we must determine whether PHI's claim is related to air carrier rates or services, "either by expressly referring to them or having a significant economic effect upon them." 938 S.W.2d at 360. We will note at the outset, that the U.S. Supreme Court's test is worded more broadly: "A claim satisfies this requirement if it has 'a connection with, or reference to, airline' prices, routes, or services[.]" *Ginsberg*, 572 U.S. at 284 (quoting *Morales*, 504 U.S. at 384).[7]

Because Tennessee's unjust enrichment law does not specifically reference nor is it directed toward air carriers, it does not fall within the first category of preempted state law, and therefore, must have a "significant economic effect" on air carrier prices, routes, or services to be preempted. *Knopp*, 938 S.W.2d at 360. PHI asserts that "[a]n award of PHI's usual, customary and reasonable rate under any common law theory, including unjust enrichment, does not have a significant effect on PHI's prices, and therefore, is not preempted." Corizon argues that PHI's claims "attempt to use state common law to directly

---

[6] In *Knopp*, the Court held that a common law negligence claim was not preempted by the ADA, because it did "not impinge in any significant way on Congress' concern" that states would impair federal deregulation of airlines. 938 S.W.2d at 362 (quoting *Cont'l Airlines, Inc. v. Kiefer*, 920 S.W.2d 274, 282 (Tex. 1996)).

[7] In its brief and at oral argument, PHI used the phrase "forbidden significant effect" in its application of the rule. This phrase comes from a sentence in the *Morales* opinion: "In any event, beyond the guidelines' express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares." 504 U.S. at 388.

impose 'reasonable' prices for air-carrier services," which would have a significant effect on rates.

The issue raises the question of how significant must the effect be? To resolve this question, we return to *Morales*, *Wolens*, and *Ginsberg*.

*Morales* tells us that some state actions may not have pre-emptive effect because they affect airline fares in too tenuous, remote, or peripheral a manner. 504 U.S. at 390. State actions may affect fares indirectly, however, and still be preempted. *Id.* at 386. At issue in *Morales* was the attempted state regulation of airline advertising by states who had adopted the "Air Travel Industry Enforcement Guidelines" from the National Association of Attorneys General. *Id.* at 379. The guidelines "contain[ed] detailed standards governing the content and format of airline advertising, the awarding of premiums to regular customers (so-called 'frequent flyers'), and the payment of compensation to passengers who voluntarily yield their seats on overbooked flights." *Id.* Although the regulations had no *direct* effect on fares nor did they dictate fares, this case "plainly d[id] not present a borderline question." *Id.* at 390. The Court reasoned that "the obligations imposed by the guidelines would have a significant impact upon the airlines' ability to market their product, and hence a significant impact upon the fares they charge." *Id.*

In both *Wolens* and *Ginsberg*, the U.S. Supreme Court found that state law claims challenging frequent flyer programs were sufficiently related to air carrier rates and services. 513 U.S. at 226; 572 U.S. at 284. The Court explained:

> Like the frequent flyer program in *Wolens*, the Northwest program is connected to the airline's "rates" because the program awards mileage credits that can be redeemed for tickets and upgrades. *See* 513 U.S. at 226. When miles are used in this way, the rate that a customer pays, *i.e.*, the price of a particular ticket, is either eliminated or reduced. The program is also connected to "services," *i.e.*, access to flights and to higher service categories. *Ibid*.

*Ginsberg*, 572 U.S. at 284 (parallel citation omitted). Although the frequent flyer program did not determine the airlines prices generally, it did affect what certain customers paid for services.

In *Musson Theatrical, Inc. v. Federal Express, Corp.*, an ADA case before this Court, shippers sued FedEx for fraud and misrepresentation because of FedEx's practice of charging more for economy two-day service than for one-day service for certain packages. No. W2000-01247-COA-R3-CV, 2001 WL 370035, at *1 (Tenn. Ct. App. Apr. 12, 2001). We held:

> Considering the first prong, we find that the claims of negligent

- 8 -

misrepresentation and fraud are directly related to airline rates, routes, or service by . . . having a significant economic effect upon rates. Furthermore, the effect is not "tenuous, remote or peripheral" as would be a prohibition against obscenity in advertising, a "nonprice" aspect of airline fare advertising. *Morales*, 504 U.S. at 390 (giving a hypothetical example of a claim that would not be preempted). Plaintiffs' claims specifically involve rates that FedEx charges for packages under eight ounces shipped by second day delivery service. Plaintiffs' allegation of misrepresentation and fraud are directly in reference to the manner in which those rates are represented in advertising in FedEx publications.

*Id.* at *8 (parallel citation omitted).

On the basis of the foregoing case law, we find that PHI's claims have a sufficient "connection to" airline prices such that they are preempted by the ADA. In *Morales*, advertising guidelines were sufficiently connected to prices such that the Court did not find it a "borderline" case or a "tenuous" connection, and in *Musson*, this Court found a sufficiently close relationship between the state-law claim and pricing, when the claim involved the manner in which the air carrier advertised its rates. PHI's claims are even more closely related to prices than the claims in *Morales* and *Musson*, because PHI seeks court enforcement of the prices it has set or, alternatively, for the court to determine a reasonable price. As in *Wolens* and *Ginsberg*, the state claims in the case before us may not affect prices paid by all customers, but they do directly affect the prices to be paid by Corizon. Accordingly, we conclude that PHI's claims have the requisite "significant economic effect" on air carrier prices.

### 2. *Knopp*'s second prong

The second part of *Knopp* test requires that "the claim [] involve the enactment or enforcement of a state law, rule, regulation, standard or other provision." 938 S.W.2d at 360. Unjust enrichment is such a claim, as it "is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist."[8] *B & L Corp. v. Thomas & Thorngren, Inc.*, 162 S.W.3d 189, 217 (Tenn. Ct. App.

---

[8] In Tennessee, a party asserting unjust enrichment must demonstrate the following elements:

(1) there must be no existing, enforceable contract between the parties covering the same subject matter; (2) the party seeking recovery must prove that it provided valuable goods and services; (3) the party to be charged must have received the goods and services; (4) the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*Smith v. Hi-Speed, Inc.*, 536 S.W.3d 458, 480 (Tenn. Ct. App. 2016) (citing *Crye–Leike, Inc. v. Carver*, 415

2004) (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)).  These implied contracts are not based on the intentions of the parties, but are obligations created by law.  *B & L*, 162 S.W.3d at 217.  It provides an avenue for recovery when no enforceable contract exists between the parties.  *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005).  In the case at bar, PHI asserted that it provided air ambulance services to inmates and that Corizon was required to financially provide for their healthcare needs.  Therefore, Corizon was conferred a benefit for which Corizon was required to pay, contends PHI.  Because whether the ADA preempts claims based on unjust enrichment is an issue of first impression in Tennessee, we will consider federal jurisprudence on the matter.

In *Brown v. United Airlines, Inc.* from the First Circuit Court of Appeals, skycaps (porters who provide curbside service at airports), brought suit against two airlines for unjust enrichment after the airlines introduced a $2.00 per bag fee for curbside service for departing passengers at airports. 720 F.3d 60, 62 (1st Cir. 2013).  The skycaps, whose income depended largely on tips, alleged that their compensation significantly decreased because passengers wrongly assumed that the charge was a mandatory gratuity.  *Id*.  The plaintiffs asserted unjust enrichment, among other state law claims.  In this pre-*Ginsberg* case, the appellate court held that "to the extent that a state common-law claim relates to a price, route, or service of an air carrier, it is preempted by the ADA." *Id*. at 66.  The court further observed that "[t]he cases that have held claims not preempted appear to have been decided on the linkage sub-question; that is, the litigated claims did not relate to prices, routes, or services of an air carrier." *Id*. at 67 (citing *Wellons v. Northwest Airlines, Inc.*, 165 F.3d 493, 494–96 (6th Cir. 1999); *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194–95 (3d Cir. 1998); *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261, 1265–66 (9th Cir. 1998) (en banc), *amended by* 169 F.3d 594 (9th Cir. 1999) (en banc)).  Presented again with essentially the same facts in the 2015 case of *Overka v. American Airlines, Inc.*, the court came to the same conclusion, stating, "Nothing in *Ginsberg* . . . undermines our reasoning in *Brown* about the application of the *Wolens* exception to the common law claims the plaintiffs press here, as those claims, too, seek to enforce a similarly 'state-imposed' obligation." 790 F.3d 36, 39–40 (1st Cir. 2015).  The court continued, "In that regard, *Brown* held first that the unjust enrichment claims fell outside the *Wolens* exception because they were 'predicated on the *lack* of any agreement' between the parties and instead turned on external considerations by which the parties had not agreed to be bound." *Id.* at 40 (quoting *Brown*, 720 F.3d at 71).

In *Stout v. Med-Trans Corporation*, the plaintiffs alleged that they were charged an excessive amount for emergency air ambulance service for their minor daughter and

---

S.W.3d 808, 824 (Tenn. Ct. App. 2011)).  Courts frequently use the terms "unjust enrichment," "quasi-contract," "quantum meruit," and "contract implied-in-law" interchangeably, as they are "essentially the same." *Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966)).

brought an unjust enrichment claim against the air carrier. 313 F. Supp. 3d 1289, 1293 (N.D. Fla. 2018). As is true under Tennessee law, "[u]nder Florida law, a claim for unjust enrichment is not based on the parties' agreement but rather an agreement created by law." *Id.* at 1296. The court, therefore, found that the ADA preempted the unjust enrichment claim because it was "not based on the parties' 'self-imposed obligations'" and thus "constitute[d] a state-imposed obligation." *Id.*

We find the amassed federal case law on the matter persuasive. *See, e.g.*, *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1068 (10th Cir. 2019) (finding that the ADA prohibited the courts from imposing the equitable remedy of unjust enrichment because it "would reflect the court's policy judgments, not the parties' mutual assent"); *Gordon v. United Cont'l Holding, Inc.*, 73 F. Supp. 3d 472, 480 (D.N.J. 2014) ("It is well settled that claims against airlines for unjust enrichment fall within the ADA's preemption clause"); *All World Prof'l Travel Servs., Inc. v. Am. Airlines, Inc.*, 282 F. Supp. 2d 1161, 1169, 1171 (C.D. Cal. 2003) (concluding that unjust enrichment claims involve the enforcement of state law, but under the facts of the case, enforcement "will not have the effect of regulating [airline] pricing policies" or services). Consequently, we hold that because PHI's unjust enrichment claim is related to air carrier rates or services and is based on a state-imposed obligation rather than a self-imposed one, it is preempted by the ADA.

## B. Action on Sworn Account

We now turn to the question of whether the ADA preempts an action on sworn account based on Tennessee Code Annotated § 24-5-107, which provides:

> (a) An account on which action is brought, coming from another state or another county of this state, or from the county where suit is brought, with the affidavit of the plaintiff or its agent to its correctness, and the certificate of a state commissioner annexed thereto, or the certificate of a notary public with such notary public's official seal annexed thereto, or the certificate of a judge of the court of general sessions, with the certificate of the county clerk that such judge is an acting judge within the county, is conclusive against the party sought to be charged, unless that party on oath denies the account or except as allowed under subsection (b).
>
> (b) The court shall allow the defendant orally to deny the account under oath and assert any defense or objection the defendant may have. Upon such denial, on the plaintiff's motion, or in the interest of justice, the judge shall continue the action to a date certain for trial.

The trial court held an action on sworn account was not a remedy available to PHI, as Section 24-5-107 is merely "a procedural mechanism used to simplify and effectuate a party's remedy in debt collection matters."

Statutory construction is a question of law that is reviewable on appeal on a de novo basis without any presumption of correctness of the lower court decision. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 366 (Tenn. 2012). In interpreting a statute, "[t]he text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose." *Id*. at 368.

The statute implicated is in Title 24, "Evidence and Witnesses," section 5 "Presumptions." The statute — in keeping with the title — establishes rules for the admission of evidence of a debt and provides for a presumption that the debt is valid in the absent of a denial by the defendant. Section 24-5-107 facilitates recovery for specific debts, such as a credit card balance. *Chumley v. Navistar, Inc.*, No. 3:18-CV-0510, 2018 WL 3997347, at *2 (M.D. Tenn. Aug. 20, 2018) (citing *Am. Exp. Bank, FSB v. Fitzgibbons*, 362 S.W.3d 93, 96–97 (Tenn. Ct. App. 2011)). The plain language of the statute does not create a cause of action; rather, it provides a mechanism by which to pursue a cause of action. As this Court has stated, "The reason and policy of this act are said to be to furnish an easy and ready means of collecting accounts when no real defense exists, unless it shall be denied on oath, and the plaintiff thereby notified to make proof." *Fitzgibbons*, 362 S.W.3d at 96 (citations omitted). The trial court, in its well-researched and well-reasoned analysis, stated:

> [A]n action on sworn account is not a separate claim in of itself, but a procedure used to simplify and effectuate a party's remedy. *Wheat Enterprises, Inc. v. Redi-Floors, Inc.*, [501 S.E.2d 30, 34] ([Ga. Ct. App.] 1998) (quoting *Watson v. Sierra Contracting Corp.*, [485 S.E.2d 563] ([Ga. Ct. App.] 1997) ("An action on open account is a simplified pleading procedure where a party can recover what he was justly and equitably entitled to without regard to a special agreement to pay such amount for goods or services as they were reasonably worth when there exists no dispute as to the amount due or the goods or services received."); *Am. Sec. Serv., Inc. v. Baumann*, 289 N.E.2d 373, 379 (Ohio Ct. App. 1972) ("The provision for short form pleadings in an action on an account is merely a procedural device to shorten the pleadings permitting inferences of averments surrounding the contractual relationship, which otherwise would have to be pleaded.").

We agree that "[t]he statute is not meant to provide an alternative theory of liability to traditional tort or contract actions," *Chumley*, 2018 WL 3997347, at *2. Therefore, we conclude that Tennessee Code Annotated § 24-5-107 does not create a separate cause of action, but rather establishes a procedure by which a plaintiff may pursue a cause of action.

We have already found that PHI's underlying cause, unjust enrichment, is preempted by the ADA, so we affirm the trial court's holding that PHI cannot recover by asserting "action on sworn account" as a separate cause of action.

## C. PHI's Remaining Arguments

PHI argues that ADA preemption cannot be asserted except by air carriers. In support of this notion, PHI cites an opinion from the intermediate appellate court in Texas that stated: "The Act was intended to pre-empt only those state actions having a regulatory effect upon the airlines rather than to preclude airlines from seeking the benefits and protections of state law to enforce their self-imposed standards, regulations, and contracts." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 221 (Tex. App. 2009). Inasmuch as we have identified no other authority that reaches that conclusion, we find it unpersuasive. PHI also cites language from a U.S. Supreme Court opinion which states that "[the ADA] confers on private entities (*i.e.,* covered carriers) a federal right to engage in certain conduct subject only to certain (federal) constraints." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1480 (2018). The cited language was used by the Court to give an example of a Congressional statute with preemptive effect in a case that was wholly unrelated to the ADA. Thus, viewing the quotation in its proper context, it would be unreasonable to read that single sentence as determinative of the ADA's preemptive scope. Therefore, we reject the argument that ADA preemption may only be asserted by air carriers.

Moreover, we find PHI's argument – that preemption would "destroy PHI's ability to enforce the rates it sets in direct contravention of the ADA's central purpose" – flawed. A central purpose of the ADA, as expressed by Congress, is "to encourage, develop, and attain an air transportation system which relies on competitive market forces to determine the quality, variety, and price of air services, and [] other purposes[.]" H.R. Conf. Rep. No. 95-1779, p. 53 (1978), U.S. Code Cong. & Admin. News 1978, 3737. One of the several policy considerations set out by Title 49 of the United States Code is "encouraging, developing, and maintaining an air transportation system relying on actual and potential competition – to provide efficiency, innovation, and low prices." U.S.C. § 40101 (a)(12)(A). PHI retains the ability to enforce its rate through contract, consistent with the U.S. Supreme Court's opinion in *Wolens*. If potential customers decline to contract with PHI at its rates, that is the nature of "competitive market forces" at work.

PHI further asserts that preemption of its claim "leads to an absurd result – the total inability of a non-contracted air ambulance provider to collect any amount of payment for its services, since there is no federal common law claim for unjust enrichment or quantum meruit." PHI cites *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013), for support of its supposition that "Corizon's position is untenable." PHI's reliance on this case is misplaced. In *Dan's City*, a vehicle owner brought suit under New Hampshire law against a towing company that towed his vehicle and later traded it to a third party without compensating the owner. 569 U.S. at 254–55. The Court considered a preemption clause in the Federal Aviation Administration Authorization Act of 1994 (FAAAA) applicable to motor carriers, which provides: "[A] State ... may not enact or enforce a law, regulation, or

other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property." *Id.* at 254 (quoting 49 U.S.C. § 14501(c)(1)). The Court held that FAAAA does not preempt state-law claims stemming from the storage and disposal of a towed vehicle. *Id.* at 266. The Court did state that "the preemption . . . [would] leave vehicle owners without any recourse for damages, [and] it would eliminate the sole legal authorization for a towing company's disposal of stored vehicles that go unclaimed." *Id.* at 265. However, the basis of the Court's holding was that while 49 U.S.C. § 14501(c)(1) "[b]orrow[ed] from the ADA's preemption clause, [it] add[ed] a new qualification[.]" *Id.* at 256. The Court explained: "[t]he addition of the words 'with respect to the transportation of property' . . . . massively limits the scope of preemption ordered by the FAAAA." *Id.* at 261 (internal quotation marks and citations omitted). Indeed, the Court stated that the plaintiff's claims "do[] not involve 'transportation' within the meaning of the federal Act" and that they "also survive preemption under § 14501(c)(1) because they are unrelated to a 'service' a motor carrier renders its customers." *Id.* at 262.

Due to the significant difference between the FAAAA preemption clause and the ADA preemption clause, we find it inappropriate to broaden the Court's holding in *Dan's City* to include the ADA,[9] particularly because the Supreme Court itself has not done so. Notably, in *Ginsberg*, the following year, the Court did not use any of the *Dan's City* language in preserving a remedy for the plaintiffs, but instead carved out a contract exception to ADA preemption. Our holding that PHI's claims are preempted is also in accord with most federal jurisprudence interpreting the ADA's preemption clause. Thus, if Congress' intent was other than what the case law provides, the remedy is a legislative one.

Having resolved the legal issues in Corizon's favor, we affirm the trial court's grant of summary judgment. We turn now to Corizon's issues on appeal.

## D. Voluntary Nonsuit

Both PHI and Corizon agree that PHI never asserted a breach of "the alleged Indiana contract," and that there was no breach of contract claim in PHI's complaint or amended complaint. It was Corizon that raised the issue of a contract in Indiana in its defense, some

---

[9] In *Brown*, the First Circuit also declined to extend the *Dan's City* holding to the ADA, stating:

Grasping at straws, the plaintiffs next suggest that the Supreme Court's recent decision in *Dan's City Used Cars, Inc. v. Pelkey*, [59] U.S. [251], 133 S.Ct. 1769, 185 L.Ed.2d 909 (2013), somehow changed the landscape and reshaped preemption doctrine to favor their position. This suggestion represents a triumph of hope over reason. . . . Fairly read, *Dan's City* does not advance the plaintiffs' cause by so much as an inch.

720 F.3d at 71.

- 14 -

three or more years into the litigation. In its March 2020 Order, the trial court granted PHI's motion for summary judgment, "except as to the Indiana contract," and stated, "There is a genuine dispute of material fact as to whether the Indiana contract remains in effect between the parties which must be decided by evidentiary hearing." PHI states that in order "[t]o dispense with an evidentiary hearing on a breach of contract claim PHI had never asserted," it moved to nonsuit any Indiana contract claim. In its motion, PHI stated, "To the extent that a claim by PHI for payment under the Indiana Contract exists, PHI moves to nonsuit this claim, without prejudice, pursuant to Tenn. R. Civ. P. 41.01." The trial court subsequently ordered, "Any contractual claim plaintiff may have arising from the Indiana Contract is hereby dismissed without prejudice." Corizon, opposing the nonsuit, filed a motion to vacate, alter or amend, which the trial court denied.

Corizon argues that the trial court erred in permitting PHI, pursuant to Tennessee Rule of Civil Procedure 41.01, to nonsuit a contract claim for Indiana service when PHI "did not plead, seek leave to plead, or otherwise assert" such a claim, and asks this Court to reverse this aspect of the trial court's judgment. The interpretation of the Tennessee Rules of Civil Procedure is a question of law which we review de novo. *Lacy v. Cox*, 152 S.W.3d 480, 483 (Tenn. 2004). Rule 41 of the Tennessee Rules of Civil Procedure states, in relevant part, "the plaintiff shall have the right to take a voluntary nonsuit to dismiss an action without prejudice by filing a written notice of dismissal at any time before the trial of a cause and serving a copy of the notice upon all parties[.]" Tenn. R. Civ. P. 41.01(1). The rule does not permit the dismissal of a claim that is not actually before the court. Accordingly, we reverse the trial court's grant of voluntary nonsuit to PHI as a nullity.

Corizon's remaining issues are pretermitted by our holding that PHI's claims are preempted, and we express no opinion with respect to them.

## V. CONCLUSION

Based on the forgoing, we find that PHI's claims are preempted by the ADA and we, therefore, affirm the trial court's grant of summary judgment in favor of Corizon. We reverse the trial court's grant of voluntary nonsuit to PHI for the unpled contract claim. Costs of this appeal are taxed to the appellant, PHI Air Medical, LLC, for which execution may issue if necessary.

_____
JOHN W. MCCLARTY, JUDGE